[Cite as *State v. Rife*, 2012-Ohio-3264.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellant, | : | Case No. 11CA3276 |
| | : | |
| vs. | : | |
| | : | |
| SHANE P. RIFE, | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| Defendant-Appellee. | : | |
| | : | **RELEASED: 07/10/12** |

_____

APPEARANCES:

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Jeffrey C. Marks, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellant.

 James T. Boulger, Chillicothe, Ohio, for Appellee.
_____

Harsha, J.

{1}     The state appeals the trial court's suppression of evidence, which was based on the finding that the state failed to justify its continued detention of Shane P. Rife following a traffic stop. The state asserts suppression on that basis is erroneous because Rife's motion failed to raise the issue with particularity.  However, Rife's supporting memorandum contained legal principles applicable to detentions following traffic stops.  This language sufficiently notified the state that Rife was challenging acts beyond the initial stop.  Thus, the state's argument is meritless.

{2}     The state additionally asserts that because Rife's written motion did not adequately advise it that he was challenging the extended detention, the court should have granted it a continuance to present evidence of the constitutionality of that intrusion.  Because Rife's motion provided sufficient notice to the state, the court had no

duty to continue the hearing.  Accordingly, we overrule the state's assignments of error

and affirm the trial court's judgment.

## I.  FACTS

**{3}**     The Ross County Grand Jury returned an indictment that charged Rife

with possession of marijuana, in violation of R.C. 2925.11, and trafficking in marijuana,

in violation of R.C. 2925.03.  Rife entered not guilty pleas and later filed a two-page

motion to suppress.  The first page of Rife's motion states:

> "The defendant * * * respectfully requests that the Court order
> excluded from evidence at trial in the above styled matter all testimony
> and documentary evidence pertaining to the results of analysis of items of
> physical evidence, and the physical evidence obtained from the defendant
> and the motor vehicle he was operating subsequent to his stop and
> detention.
>     Additionally, the defendant requests that the Court order excluded
> from evidence all testimony of law enforcement officers concerning
> statements of the defendant and observations of his person subsequent to
> the initial detention on the date in question.
>     The defendant makes this request for the reason that the stop and
> initial detention, search of his person and the automobile, and his
> subsequent arrest were performed in violation of rights secured to [him]
> under the Fourth and Fourteenth Amendments of the United States
> Constitution and Article One, Section Fourteen of the Constitution of Ohio.
> These grounds are stated with greater particularity in the attached
> Memorandum."

Rife's "attached Memorandum" stated:

> "A police initiated stop of an automobile is a limited seizure under
> the Fourth Amendment and falls within the scope and holdings in *Terry v.*
> *Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; and *Delaware v.*
> *Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660.  The scope
> of a routine traffic stop must be tailored to its underlying justification and
> must last no longer than is necessary to effectuate the purpose of the
> stop.  When a detention exceeds the duration necessary to accomplish
> the purpose of the original stop, and when such continuing detention is not
> based upon any articulable facts giving rise to a reasonable suspicion of
> some illegal activity, the continued detention constitutes an illegal seizure
> of the person.

In the present case, the evidence at hearing, which will include the video/audio data recorded on the cruiser equipment of the detaining officer will establish that Mr. Rife committed no traffic infraction or any other violation of law within the presence of the Trooper who initiated the stop. There was no reasonable suspicion to support the stop and the detention was unlawful from its inception. The subsequent search of the vehicle was the fruit of the initial Fourth Amendment violation."

{4}     In preparation for the hearing, the state subpoenaed the two Ohio State Highway Patrol Troopers involved in the traffic stop and subsequent detention. The state later requested a continuance because "Trooper Mikesh, an essential State's witness as she is the canine handler in this matter, is unavailable due to a scheduled vacation." The court granted the state's motion to continue, and the state again subpoenaed both Troopers Seabolt and Mikesh for the re-scheduled hearing.

{5}     At the suppression hearing Trooper Seabolt was the state's only witness. He testified he observed Rife operating a vehicle that did not have a front license plate. He further noticed that the vehicle's rear license plate was obscured so he could not observe the issuing state. He stated although he could see the numbers and letters, he could not see which state had issued the license plate. Trooper Seabolt then initiated a traffic stop due to the failure to properly display a rear license plate. Once he stopped the vehicle, he approached the vehicle and could see a validation sticker from the state of West Virginia on the lower right-hand corner of the rear license plate.

{6}     On cross-examination, Rife's counsel questioned the trooper's motives in asking Rife to exit the vehicle and placing him in the patrol cruiser. The following colloquy ensued:

"Mr. Boulger: You asked the driver to get out of the car?
Trooper Seabolt: That's correct.
Mr. Boulger: You placed him in your cruiser?
Trooper Seabolt: Yes.

> Mr. Boulger: For the purpose of issuing a traffic citation for failure to display?
> Trooper Seabolt: Not necessarily.
> Mr. Boulger: What was your purpose in asking the driver out of the car and placing him in your cruiser?
> Mr. Marks: Your Honor, I'll object. The defendant's motion addresses only the sufficiency of the pullover itself. It doesn't go into any other issues."

The court overruled the state's objection. Trooper Seabolt then explained he requested Rife to "exit the vehicle due to noticing both him and his passenger * * * were avoiding eye contact with me. I wanted to speak with him outside of the vehicle to determine * * * what the basis of them avoiding eye contact with me were." At that point, defense counsel concluded his cross-examination of the trooper.

{7} On re-direct, the prosecutor continued to inquire into the trooper's reason for initially stopping the vehicle. The prosecutor did not explore the trooper's justification for ordering Rife to exit the vehicle and for continuing to detain him.

{8} The state did not present any other witnesses, but both the state and Rife agreed to submit an audio and video recording of the stop for the court to view. The court then asked the prosecutor how the court was to determine what evidence to suppress when the prosecutor did not present testimony identifying the evidence the trooper seized as a result of the stop. The prosecutor responded: "Your Honor, the defendant's motion only states that there wasn't probable cause to pull over the vehicle and initiate the traffic stop. That's all the further the State intends on going with this, since that's what was asked by the defendant." Rife's counsel then interjected: "Your Honor, I believe in the first paragraph we indicate we ask for the suppression of all testimony and documentary evidence pertaining to results of analysis of items of

physical evidence obtained from the defendant in the motor vehicle he was operating

subsequent to his stop and initial detention."

**{9}**     During closing arguments, the prosecutor asserted that "[i]t appears the

only question before the Court is the sufficiency of the initial traffic stop itself."  After the

prosecutor finished his argument, which centered entirely upon the alleged license plate

violation, the court questioned counsel why he stated "that the only issue is * * * whether

there was an obscurement of the plate."  The prosecutor answered that the license plate

infraction was the basis for the stop.  The court stated:

> "Well, the Court is left to assume from the indictment that
> marihuana was seized from this vehicle.  There's been no testimony to
> indicate where the marihuana was seized, when it was seized, how it was
> seized, was it on the person of the defendant, was it in the vehicle, any
> circumstances concerning reasonable articulable suspicion as it applies to
> vehicles stopped along the road.  Why haven't I heard any evidence on
> that?
>     Mr. Marks:  Your Honor, I believe that there was testimony from my
> cross-examination of the defendant that there was marihuana found in the
> vehicle upon there being a search later. * * *."

**{10}**     The court stated that it did not have any evidence informing it why Rife

was arrested.  The prosecutor again stated that Rife's motion challenged only the initial

cause for the traffic stop.  The court apparently did not agree and stated:

> "The defendant's last paragraph in his motion says that the
> defendant makes this request for the reason that the stop and initial
> detention, search of his person and the automobile and his subsequent
> arrest were performed in violation of his rights.  This was all done without
> a warrant.  It's the State's burden.  He's raised it."

The prosecutor then requested a continuance so that he could elicit further testimony.

He explained that his "reading of the motion was that the only issue was the initial traffic

stop."  Rife's counsel objected to a continuance and observed that the state previously

requested a continuance due to Trooper Mikesh's (the canine handler) unavailability,

and, thus, the state knew that issues other than the initial traffic stop may be involved.

The court denied the state's request for a continuance.

{11}    After Rife's counsel's argument, the court asked defense counsel whether

he agreed with the prosecutor that "*Terry v. Ohio*[, 392 U.S. 1 (1968),is] not an issue in

this case[.]"  Rife's counsel stated:

> "Your Honor, I believe that the on-going detention of the defendant
> would raise significant issues.  He's pulled over apparently for what is * * *
> a minor misdemeanor violation of the display requirement.  No citation is
> issued.  No citation, there isn't any evidence, was even attempted.  We
> have an immediate refocusing for reasons that have remained obscure
> except that, the officer said the passenger and driver didn't make eye
> contact.  So that seems to be the sole basis for an on-going detention in
> this case.  Now, we believe that that, that is insufficient to justify what has
> been recalled as a twenty to thirty minute detention without any attempt to
> issue a traffic citation or compose one."

{12}    The court determined that the trooper had probable cause to stop the

vehicle.  However, the court concluded that the ensuing detention was unlawful.  The

court explained:

> "There has been no evidence presented in any way, shape or form
> as to why Trooper Seabolt went beyond stopping this vehicle and citing
> this vehicle for a minor traffic violation.  There has been no evidence
> presented concerning the basis for the extension or continuance of this
> stop other than Trooper Seabolt's testimony that he asked the defendant
> and the other occupant to get out because they weren't making eye
> contact.  Eye contact may be a minor factor to consider among other
> factors in determining whether there is a reasonable and articulable
> suspicion that the driver or the occupant of a vehicle may be committing a
> criminal violation, but it is not in and of itself alone a valid justification from
> stopping a * * * citizen on the highway and extending that stop so that a
> search of his person and his vehicle can be conducted.  This Court would
> have considered other evidence regarding a *Terry* stop which might have
> constituted justification for the continuation of the stop, but no such
> evidence has been presented.  This was raised in the defendant's motion
> to suppress.  He specifically challenged the search of his person and his
> automobile and his subsequent arrest.  The State has the burden of going
> forward in a warrantless search, and proving in a warrantless search.
> Therefore, the motion to suppress is sustained, because although there

was a valid stop there's been no evidence presented that the stop should have been expended or continued beyond a citation for the infraction of obstructing the license plate."

**{13}** The court thus granted Rife's motion to suppress.

## II.  ASSIGNMENTS OF ERROR

**{14}** The State raises four assignments of error:

First Assignment of Error:

"The trial court erred in allowing the defendant to argue issues for suppression which were not contained in the defendant's own motion to suppress."

Second Assignment of Error:

"The trial court erred in expanding the scope of the motion to suppress filed by the defendant in this matter, without giving notice to the State of Ohio."

Third Assignment of Error:

"The trial court erred in granting the defendant's motion to suppress by considering evidence and issues which were not raised by the defendant's motion to suppress."

Fourth Assignment of Error:

"The trial court erred in not granting the State's motion to continue the hearing on the motion to suppress in order for the state to present evidence on issues not sufficiently contained in the defendant's original motion to suppress."

## III.  ANALYSIS

## A.  FAILURE TO COMPLY WITH APP.R. 16(A)(7)

**{15}** The state combined its first three assignments of error.  App.R. 16(A)(7) requires separate arguments for each assignment of error.  "While appellate courts may jointly consider two or more assignments of error, the parties do not have the same option in presenting their arguments."  *Keffer v. Cent. Mut. Ins. Co.,* 4th Dist. No.

06CA652, 2007-Ohio-3984, 2007 WL 2231015, at ¶8, fn.2.  Thus, we would be within

our discretion to simply disregard the state's first three assignments of error.  App.R.

12(A)(2); *Keffer* at ¶8, fn. 2.  Accord *State v. Shepherd,* 4th Dist. No. 10CA3374, 2011–

Ohio–2192, at ¶15, fn. 1.  Nonetheless, we will review them.

{16}   The state summarizes its first three assignments of error "as whether or

not the defendant's motion to suppress in this case adequately put the State on notice

of the specific issues [he] based [his] motion on, and subsequently, whether the Court

abused its discretion in sustaining the motion on grounds which were not raised in the

motion."  The state argues that Rife's motion did not particularize the issues and did not

adequately inform the state of the basis of his challenge.  The state claims that Rife's

assertion that  "all evidence" be suppressed is not sufficiently particularized.  It further

contends that Rife's argument that the evidence should be suppressed due to the

unlawfulness of the stop and initial detention, the search of the person and automobile,

and the subsequent arrest "particularizes nothing, and basically lists every reason which

could present itself during a warrantless traffic stop."  The state asserts that Rife's

motion "put [it] on notice that all of its evidence is subject to being suppressed because

of any reason which may arise during a traffic stop.  This is not sufficient notice."  In

short, the state claims that the lawfulness of the initial stop is the only issue Rife

specified with particularity so as to provide the state with sufficient notice.

### B.  MOTION TO SUPPRESS NOTICE REQUIREMENTS

{17}   Crim.R. 47 requires a motion to suppress to "state with particularity the

grounds upon which it is made and [to] set forth the relief or order sought."  The Ohio

Supreme Court has interpreted this rule to mean that "the defendant must (1)

demonstrate the lack of a warrant, and (2) raise the grounds upon which the validity of

the search or seizure is challenged in such a manner as to give the prosecutor notice of

the basis for the challenge." *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889

(1988)*,* paragraph one of the syllabus. Accord *State v. Peagler*, 76 Ohio St.3d 496, 500,

668 N.E.2d 489 (1996); *State v. Shindler*, 70 Ohio St.3d 54, 636 N.E.2d 319 (1994),

syllabus.  These requirements exist because "the prosecutor cannot be expected to

anticipate the specific legal and factual grounds upon which the defendant challenges

the legality of a warrantless search."  *Wallace*, 27 Ohio St.3d at 218.  Instead,

> "[t]he prosecutor must know the grounds of the challenge in order to
> prepare his case, and the court must know the grounds of the challenge in
> order to rule on evidentiary issues at the hearing and properly dispose of
> the merits.  Therefore, the defendant must make clear the grounds upon
> which he challenges the submission of evidence pursuant to a warrantless
> search or seizure."

*Id.* at 218-219 (citations omitted).  Once the defendant demonstrates that a warrantless

search or seizure occurred and provides the state with sufficient notice of the basis for

his challenge to the search or seizure, the state bears the burden to establish that the

search or seizure fell within an exception to the warrant requirement.  *Wallace*,

paragraph two of the syllabus.  Accord *Peagler*, 76 Ohio St.3d at 500.

{18}  The defendant need not particularize the legal and factual bases for his

challenge in excruciating detail.  See *State v. Horner*, 4th Dist. No. 01CA6 (Dec. 6, 2001)

(stating that "although motions to suppress evidence need not specifically allege every

underlying fact involved in a suppression issue, the motion must sufficiently put the

prosecution on notice that a certain issue will be contested").  Rather, a suppression

motion provides the prosecution with sufficient notice when it "state[s] with particularity

the statutes, regulations and constitutional amendments [the defendant] allege[s] were

violated, [and] set[s] forth some underlying factual basis * * * ." *Shindler*, 70 Ohio St.3d at 58.

{19}   In *Shindler*, the court determined that Shindler's motion to suppress provided the state with sufficient notice of the legal and factual grounds upon which she challenged the warrantless search and seizure when her motion stated, in part, that "[t]here was no lawful cause to stop the defendant, detain the defendant, and/or probable cause to arrest the defendant without a warrant." *Id.* at 54.  In a memorandum in support of her motion, Shindler further alleged that she initially was stopped "because of a speed violation, (Ohio Revised Code Section 4511.21), a minor misdemeanor. This is an insufficient legal basis for a Driving Under the Influence stop." *Id.* at 55.

{20}   Without conducting a hearing, the trial court overruled Shindler's motion after it determined that her "'shotgun,' 'boilerplate' motion failed to set forth a factual basis to justify an evidentiary hearing." *Id.* at 55.  The court subsequently found Shindler guilty, and she appealed.  The appellate court reversed Shindler's conviction. It concluded that the trial court should have held a hearing regarding her suppression motion because her "motion gave the prosecutor and the court sufficient notice of the basis of her challenge [when her] motion specifically cited the statutes, regulations and constitutional rights she alleged were violated." *Id.* at 56.  The appellate court then certified its decision as being in conflict with another appellate district.   The Ohio Supreme Court framed the issue as "to what extent a motion to suppress evidence must set forth its legal and factual bases in order to require a hearing." *Id.* at 56.  The court concluded that Shindle*r's* motion "sufficiently put[] the prosecution on notice of the basis of the challenge to the stop and arrest." *Id.* at 57.  The court explained that her motion

"cited legal authority and set forth a factual basis for challenging the investigative stop and the arrest.  Specifically, [Shindler] claimed that the trooper based his arrest on Shindler's minor speeding violation and her moderate odor of alcohol."  *Id.* at 57.   This satisfied Crim*.R.*47.

{21}    In applying Crim.R. 47's particularity requirement, appellate courts have routinely approved of suppression motions that can fairly be characterized as far more "bare bones" than Rife's.  In *State v. Hill*, 8th Dist. Nos. 83762 and 83775, 2005-Ohio-3155, the court determi*ned* that Hill's suppression motion provided the state with sufficient notice that Hill was challenging the validity of a stop when his motion stated, in its *ent*irety:

> "Now comes the Defendant, Michael Patrick Hill, by and through his undersigned counsel of record, and hereby moves this Honorable Court to Suppress any and all evidence as fruit of t*he* poisonous tree from the illegal stop and detention of Defendant Michael Patrick Hill.  Defendant request*s t*hat hearing on this motion be set forthwith accordingly."

*Id.* at ¶14.  The court determined that the defendant's use of the phrase "illegal stop and detention" "put the prosecutor on sufficient notice that the legal basis of the stop was at issue."  *Id.* at ¶19.

{22}    In *State v. Mook*, 11th Dist. Nos. 2001-T-0057 and 2001-T-0058 (Dec. 6, 2002), the court held that the following motion to suppress provided the state with sufficient notice of the basis of Mook's challenge:  "Now comes the defendant and moves the Court to suppress all evidence in this case subsequent to the traffic stop of the defendant for speeding.  In support of this motion, defendant says that the arresting officer did not have probable cause to stop the defendant for speeding."  *Id.* at ¶4-5. The court explained:

"While [the defendant's] motion was exceedingly short, it gave the prosecutor and the court notice of the issues to be decided. The prosecution and the court were both put on notice that the basis of the motion was the lack of probable cause for the stop. The prosecution was also able to present all available evidence with regard to Officer Sheridan's probable cause for the stop. In addition, because the issue did not require any specific authority beyond the general authority used in every probable cause determination, the state was not prejudiced by the failure to cite legal authority in the motion."

*Id.* at ¶19.

{23} In *State v. Burnette*, 7th Dist. No. 09CA44, 2011-Ohio-6400, the defendant appealed his conviction following a no contest plea. One argument he raised on appeal was that the trial court should have suppressed evidence obtained as a result of a traffic stop when the state failed to demonstrate at the suppression hearing that the law enforcement officer possessed reasonable suspicion to stop the vehicle. On appeal, the court agreed with Burnette that the state did not present sufficient evidence at the suppression hearing to uphold the traffic stop. The court then examined whether Burnette's suppression motion sufficiently advised the state that the lawfulness of the traffic stop was at issue. It determined that Burnette's motion "was sufficient to invoke the state's burden to present evidence on the reason for the initial stop at the suppression hearing." *Id.* at ¶27. Burnette's motion requested the trial court to suppress "any physical evidence seized as a result of an illegal search and seizure and of any other items obtained during or following the unlawful arrest, search, seizure, and investigation of appellant." *Id.* at ¶26. The motion additionally contained a memorandum in support that contained legal principles regarding investigative stops and reasonable suspicion. It further discussed the legal principles regarding the continuation of an otherwise valid detention. The court determined that because

Burnette's motion sufficiently raised the lawfulness of the initial stop, he did not waive the issue for appeal purposes and it could therefore reverse the trial court's judgment on that basis.

{24}    In *State v. Krasne*, 2nd Dist. No. 13421 (April 23, 1993), the court determined that "a simple allegation that there was insufficient probable cause to make an initial stop, without more, was  sufficient to support a motion to suppress based upon that ground." *State v. Palmer*, 2nd Dist. App. No. 3085 (Mar. 8, 1995), explaining *Krasne*.  The *Krasne* court explained:

> "[O]nce the defendant has indicated that his attack is based upon lack of probable cause to make the initial stop, there is nothing else for him to say.  From the defendant's point of view, he was driving along, minding his own business, when the police unaccountably stopped him.  Any further explanation that the defendant might give, such as why the police stopped him, is apt to be against his interest. To require a defendant to say more than that he was stopped without probable cause is to require him to speculate as to the reasons that the stopping officer might articulate for the stop.  We conclude that a defendant cannot be required to do so."

Furthermore, as the *Palmer* court later recognized, "the proof to which the State needs to resort in order to support a stop and detention is usually not technical or complex, and ordinarily requires only the testimony of the arresting officer."

{25}    And in *State v. Gullett*, 78 Ohio App. 3d 138, 143 (1992), we approved a motion that was "lacking in specific detail" on the basis that memorandum in support cited sufficient legal authority to raise the issue of investigative stops and/or traditional probable cause intrusions.

{26}    Here, Rife's motion sufficiently advised the court and the state of the basis of his motion.  It states with particularity the constitutional amendment he claims the trooper violated, i.e., the Fourth Amendment, and sets forth some underlying factual

basis. Rife's motion asserted that "the stop and initial detention, search of his person and the automobile, and his subsequent arrest were performed in violation of" the Fourth Amendment and requested the court to suppress all of the evidence obtained as a result of the traffic stop, detention, and subsequent search.

{27} In his memorandum in support, Rife set forth the legal principle that an automobile stop constitutes a seizure and that this seizure "must be tailored to its underlying justification and must last no longer than is necessary to effectuate the purpose of the stop." This language raised an issue regarding the validity of Rife's continued detention following the traffic stop, i.e, whether it lasted longer than necessary to effectuate the purpose of the stop. See *Burnette* (concluding defendant's motion sufficiently raised lawfulness of traffic stop when memorandum in support contained the applicable legal principles). Moreover, Rife explained the black-letter law regarding continued detentions: "When a detention exceeds the duration necessary to accomplish the purpose of the original stop, and when such continuing detention is not based upon any articulable facts giving rise to a reasonable suspicion of some illegal activity, the continued detention constitutes an illegal seizure." Again, this language plainly identifies continued detention as an issue. By citing this legal principle, Rife provided notice to the state that part of the legal basis for his challenge was whether the trooper based Rife's continued detention upon articulable facts giving rise to reasonable suspicion of illegal activity.

{28} Furthermore, Rife's motion set forth some underlying factual basis to support his motion. Rife stated that he intended to rely upon the audio and video recording of the traffic stop, which contained not only the initial traffic stop but also the

continued detention and the ensuing search.  He stated that he did not violate any law within the trooper's presence and that he intended to rely upon the facts documented in the audio and video recording of the traffic stop.  Because Rife's motion indicated that he challenged whether the trooper possessed any lawful reason to continue the detention, it did not need to set forth specific facts that would explain why the trooper continued to do so.  *Krasne*.  From Rife's standpoint, he was sitting in the car when the trooper "unaccountably" asked him to exit the vehicle.  *Id.*  Any further explanation that Rife might provide, such as why the trooper asked him to exit the vehicle, "is apt to be against his interest."  *Id.*  To require Rife to set forth facts that might explain why the trooper did or did not have a lawful basis to continue the detention would be inviting speculation as to the trooper's motives.  *Id.*

{29}     As *Shindler* demonstrates, a defendant need not set forth the basis for suppression in excruciating detail.  Instead, the question is whether the language used provides sufficient—not the best—notice to the state.  After all, "[t]he motion to suppress is merely a procedural vehicle to 'put the ball into play' and serve notice that the defendant intends to have the state meet its * * *  burden of demonstrating compliance with any and all challenged regulations and requirements."  Weiler & Weiler, Baldwins Ohio Driving Under the Influence Law (2011-2012 ed.), Section 9:13, at 247.  Here, Rife's motion meets this minimal standard.  To the extent the state is uncertain about the exact scope of the defendant's challenge, informal pretrial discovery and/or a motion for more particularized information can clarify the issues while conserving time and effort for the parties and the trial court.  In our view, if the state deems the motion to be

too generic, nothing is gained by waiting until the hearing to question the particularity of the motion and the nature of the corresponding burden of proof placed upon the state.

**{30}**   We agree with the trial court that the state should not have been surprised to hear Rife challenge the trooper's reasons for ordering him out of the car after the traffic stop.  Consequently, the state's arguments that Rife's motion failed to provide it with sufficient notice that he was challenging the continued detention—and not just the basis for the traffic stop—are meritless.

**{31}**   Accordingly, we overrule the state's first three assignments of error.

## C.  STATE'S MOTION TO CONTINUE

**{32}**   In its fourth assignment of error, the state argues that because Rife's motion did not adequately advise it that he was challenging the continued detention, the trial court should have continued the hearing to allow the state to gather additional evidence to rebut Rife's claim that the trooper did not have a lawful basis for continuing the detention.

**{33}**   When conducting a suppression hearing, a trial court has discretion to allow a defendant to add issues that the defendant did not raise with particularity in the written motion.  *State v. Wells*, 11 Ohio App.3d 217, 219–20, 464 N.E.2d 596 (1983); *State v. Darst*, 4th Dist. No. 97CA15 (Sept. 2, 1997).  In *Wells,* the court explained:

> "[T]he trial court, in its discretion, may permit defense counsel to supplement orally a previously filed motion to suppress if the issues raised by that motion, and those sought to be raised during the hearing, stem from the same (or common) facts that are so interrelated that disposition of those issues together would be reasonable and the prosecution would not be prejudiced thereby.  Even if the court finds the prosecution would not be prejudiced by a decision to hear and decide the supplemental issue, the court, if requested to do so, may grant a reasonable continuance to enable the prosecution to prepare and file a responsive memorandum addressing the supplemental issue."

However, the court may allow the additional issues only if it does not prejudice the prosecution. *State v. Mixner*, 12th Dist. No. CA2001-07-074 (Jan. 22, 2002). "If the prosecution is prejudiced in that it is not prepared to address the additional issue, or if the prosecution requests a continuance, the trial court should grant a continuance to enable the prosecution to prepare to meet its burden of proof on the issue." *Id.*

{34}    Here, we determined that Rife's motion gave the state sufficient notice. Thus, the trial court did not add any issues at the suppression hearing, and it therefore had absolutely no duty to continue the hearing to allow the state additional time to gather evidence to rebut Rife's challenge.

{35}    Moreover, we fail to see what possible prejudice the state could have suffered as a result of the trial court's denial of its request for a continuance. The only possible witness who could have provided testimony regarding the circumstances of the continued detention, Trooper Seabolt, was available at the suppression hearing. The state has not explained what precluded it from questioning the trooper in more detail regarding his reasons for continuing the detention. Our review of the transcripts shows that it had an opportunity to do so. On cross-examination, defense counsel asked the trooper why he ordered Rife out of the vehicle. The state then conducted a re-direct examination but chose not to inquire further about his justification for asking Rife to exit the vehicle. Such a line of questioning certainly would not be overly complex or require significant preparation. Rather, it would have been a simple matter for the state to have asked the trooper why he continued to detain Rife. As it stands, the trooper's testimony was that he did so because Rife and his passenger avoided eye contact. He did not offer any other factors that caused him to continue the detention. Thus, we fail to see

how the denial of a continuance prevented the state from obtaining other testimony from the trooper to support the continued intrusion.  To get the trooper's justification before the court would not require any technical analysis and in-depth investigation.  *Palmer*, supra.  All the state had to do was ask.  It chose not to and must now live with the testimony he provided.

{36}    Accordingly, we overrule the state's fourth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Kline, J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
      William H. Harsha, Judge




### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**